UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

OMAR BROCKMAN,

               Plaintiff,                  Case No. 2:23-cv-55

v.                                  Honorable Jane M. Beckering

KRIS TASKILA et al.,

               Defendants.

_____/

## OPINION

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff paid the full filing fee. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Taskila, Horrocks, Bastian, and Pittsley. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Hill and Gibson: First Amendment claim regarding mail tampering, First Amendment retaliation claim, and Fourteenth Amendment due process and equal protection claims. Plaintiff's First Amendment claim against

Defendants Hill and Gibson regarding the rejection of a book that was sent to Plaintiff remains in the case.

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains, however, occurred at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. Plaintiff sues the following AMF officials: Warden Kris Taskila; Assistant Deputy Warden R. Horrocks; Acting Residential Unit Manager T. Bastian; Prisoner Counselor J. Gibson; and Prison Mail Clerks Unknown Hill and Unknown Pittsley. (Compl., ECF No. 1, PageID.1–2.)

In Plaintiff's complaint, he states that in mid-April of 2022, he was transferred from the Muskegon Correctional Facility (MCF) to AMF.[1] (*Id.*, PageID.2.) Prior to Plaintiff's transfer, he had "enrolled at the Blackstone Career Institute [(Blackstone)] to participate in their 'Legal Assistant/Paralegal' program," and the school principal at MCF had "approved Plaintiff's [MDOC] Application for Correspondence Course." (*Id.*) On May 4, 2022, while at AMF, Plaintiff "mailed in his final paralegal studies exam to Blackstone." (*Id.*)

Subsequently, over a month passed, and Plaintiff "had not heard from the school." (*Id.*, PageID.3.) Plaintiff submitted two kites to the mailroom, "inquiring whether Blackstone ha[d] written him," however, Plaintiff did not receive any response. (*Id.*) Plaintiff then sent a kite to the school principal (not a party), and the school principal advised Plaintiff "that nothing was received in [the] school department on his behalf from Blackstone." (*Id.*) Thereafter, Plaintiff attempted to

---

[1] In this opinion, the Court corrects the capitalization in quotations from Plaintiff's filings.

contact Blackstone via telephone; however, "their number was blocked from his prison contacts." (*Id.*) Plaintiff had his sponsor for the Blackstone course, Jay'aee Howell, "contact Blackstone by email." (*Id.*, PageID.2, 3.)

On July 11, 2022, Plaintiff filed a grievance against the "mailroom clerks alleging that the mailroom clerks ha[d] been tampering with his outgoing/incoming mail communications." (*Id.*, PageID.3.)

On August 4, 2022, Howell ordered a book titled, "Employer's Legal Handbook," "from approved online vendor Amazon.com" for Plaintiff. (*Id.*) On August 17, 2022, Plaintiff "received a notice for mail rejection regarding the book 'Employer's Legal Handbook' from Defendant Hill alleging that the book 'contained a[n] IRS form that may be used to file false/fraudulent paperwork.'" (*Id.*) Plaintiff requested a hearing for the mail rejection, "contesting that the book did not contain a[n] IRS form" and arguing that Defendant Hill "was retaliating against him for filing prior grievances about tampering with his mail communications." (*Id.*)

On August 22, 2022, Plaintiff sent a letter to Blackstone, "informing the school that he had not yet received his graduation documents and that he believed the prison mailroom clerks ha[d] been tampering with his mail and requested Blackstone to provide him the USPS tracking number for the package containing his graduation documents." (*Id.*) In response, Elaine Smith, the student service advisor at Blackstone, provided the USPS tracking number and advised that the graduation documents had been mailed on May 18, 2022. (*Id.*) Plaintiff states that the USPS tracking number showed that "the mail package arrived at the prison," but Plaintiff did not receive the package. (*Id.*)

On September 8, 2022, Defendant Gibson held a hearing for the mail rejection for the book titled, "Employer's Legal Handbook." (*Id.*; ECF No. 1-8, PageID.39). Defendant Gibson upheld

the mail rejection, stating that the book was rejected pursuant to the MDOC's mail policy because "prisoners are prohibited from receiving mail that may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner." (ECF No. 1-8, PageID.39.) Defendant Gibson explained that the book contained an "IRS form that may be used to file false/fraudulent paperwork." (*Id.*) Defendant Gibson asked Plaintiff how he wanted "to dispose of the book." (Compl., ECF No. 1, PageID.3.) Plaintiff elected to have the mail sent to Howell at Plaintiff's expense. (*Id.*) Plaintiff states that as of the date of his complaint, the book had not been sent to Howell. (*Id.*, PageID.3–4.)

On September 9, 2022, Plaintiff submitted a grievance "against Defendants Hill and Gibson alleging that they were retaliating against him for filing prior grievance[s] about tampering with his mail communications" and alleging that Defendant Gibson denied him due process with respect to the mail rejection hearing. (*Id.*, PageID.4.) Defendant Bastian responded to Plaintiff's grievance, concluding that Defendant Hill had "appropriately rejected Plaintiff's book in accordance with policy." (*Id.*) On September 30, 2022, Defendant Horrocks affirmed Defendant Bastian's findings. (*Id.*) Subsequently, on October 5, 2022, Plaintiff filed a step II grievance about the matter. (*Id.*, PageID.5.) Defendant Taskila affirmed the step I response. (*Id.*)

On September 16, 2022, Plaintiff asked Defendant Gibson during his scheduled rounds, why Plaintiff's book had not been returned to Howell. (*Id.*) Defendant Gibson advised that the book had been sent for review to determine whether it should be placed on the restricted publications list "because taking a closer look at the book, the IRS form is already fil[l]ed out, and the print is extremely small." (*Id.*) After this conversation, Plaintiff filed another grievance about the matter, contending, *inter alia*, that Defendant Gibson "made false statements on the administrative hearing report." (*Id.*) In response, Defendants Bastian and Horrocks advised that

4

Plaintiff's claims could not be substantiated and that pursuant to MDOC Policy Directive 05.03.118, the book was being "held by the facility until a final decision by the [Correctional Facilities Administration] director" about whether to place the book on the restricted publications list. (*Id.*) On October 12, 2022, Plaintiff filed a step II grievance, and Defendant Taskila upheld the step I response. (*Id.*)

Shortly before Plaintiff filed his step II grievance, he asked Howell to order an additional copy of the book in question (Employer's Legal Handbook) to determine whether the book contained a copy of an IRS form. (*Id.*) Howell "found that [the book] did not contain a[n] IRS form" (*id.*), and Howell submitted a declaration to that effect. (ECF No. 1-11, PageID.52–53.)

Based on the foregoing allegations, Plaintiff avers that Defendants interfered with the free flow of his mail and retaliated against him in violation of the First Amendment, and that Defendants violated his right to due process and right to equal protection under the Fourteenth Amendment. (Compl., ECF No. 1, PageID.1, 6–7.) Additionally, Plaintiff suggests that Defendants Taskila, Horrocks, and Bastian violated his rights under state law. (*Id.*, PageID.6.) As relief, Plaintiff seeks compensatory and punitive damages, as well as injunctive relief. (*Id.*, PageID.8.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Defendants Taskila, Horrocks, and Bastian

With respect to Defendants Taskila, Horrocks, and Bastian's involvement in this matter, Plaintiff alleges that Defendants Taskila, Horrocks, and Bastian were involved in investigating his grievances and responding to his grievances. (*See* Compl., ECF No. 1, PageID.4–7.)

As an initial matter, Plaintiff has no due process right to file a prison grievance. The courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th

Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, although it is clear that Plaintiff disagreed with Defendants' responses to his grievances, because Plaintiff has no liberty interest in the grievance process—including the responses to grievances—Defendants' conduct did not deprive Plaintiff of due process.

Further, the United States Court of Appeals for the Sixth Circuit has held that where a defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason is that there must be active unconstitutional behavior. Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.* Additionally, in unpublished decisions, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied, or responded to, a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Wynn*, 1994 WL 105907, at *1 (discussing that there is no constitutional right to a grievance procedure).

Moreover, Plaintiff seeks to hold Defendants Taskila, Horrocks, and Bastian liable for the actions of their subordinates. (*See* Compl., ECF No. 1, PageID.5 (stating "Defendant Kris Taskila,

R. Horrocks and T. Bastian[] [are] being charged with complicit supervisory liability in these allegations").) Government officials, such as Defendants Taskila, Horrocks, and Bastian, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Furthermore, as discussed above, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendants Taskila, Horrocks, and Bastian encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants Taskila, Horrocks, and Bastian were personally involved in the alleged violations of Plaintiff's constitutional rights.

For all of the reasons set forth above, Plaintiff fails to state a claim against Defendants Taskila, Horrocks, and Bastian, and his claims against these Defendants will be dismissed.

### B.    Claims Regarding Interference with Mail

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley*, 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley*, 482 U.S. 78 (1987). Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner*, 482 U.S. 78.

### 1.    Tampering with Mail

Plaintiff alleges in a conclusory manner that Defendants Hill and Pittsley "tamper[ed] with his incoming mail communications sent to the prison from Blackstone." (Compl., ECF No. 1, PageID.6–7.) However, Plaintiff fails to allege any facts to support this conclusory assertion. Instead, without identifying any individuals who were involved, Plaintiff simply states that he filed a grievance against the "mailroom clerks alleging that the mailroom clerks ha[d] been tampering

with his outgoing/incoming mail communications." (*Id.*, PageID.3.) Plaintiff does not set forth any facts to suggest that Defendants Hill and Pittsley were personally involved in the alleged mail tampering. (*See generally id.*)

Where a person is named as a defendant without an allegation of specific conduct, the claim is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Additionally, any "[s]ummary reference to a single, five-headed 'Defendants' [or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))).

Accordingly, Plaintiff's mail tampering claim against Defendants Hill and Pittsley will be dismissed. This is Plaintiff's sole claim against Defendant Pittsley, so Defendant Pittsley will be dismissed from this action.

### 2.    Book Rejection

To determine whether prison restrictions on mail, including books and letters, are reasonably related to a legitimate penological interest, the Court must assess the restriction by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative

means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Turner*, 482 U.S. at 89–90.

Here, Plaintiff "received a notice for mail rejection regarding the book 'Employer's Legal Handbook' from Defendant Hill alleging that the book 'contained a[n] IRS form that may be used to file false/fraudulent paperwork.'" (Compl., ECF No. 1, PageID.3.) On September 8, 2022, Defendant Gibson held a hearing for the mail rejection, and Gibson upheld the rejection. (*Id.*; ECF No. 1-8, PageID.39.) In the administrative hearing report for the mail rejection, Defendant Gibson stated that the book was rejected pursuant to the MDOC's mail policy because "prisoners are prohibited from receiving mail that may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner." (ECF No. 1-8, PageID.39.) Defendant Gibson explained that the book contained an "IRS form that may be used to file false/fraudulent paperwork." (*Id.*) Plaintiff contends that the book in question does not contain an IRS form. (Compl., ECF No. 1, PageID.5.) Plaintiff states that he had a third-party non-prisoner review the book, and she submitted a declaration stating that there was no IRS form in the book. (*Id.*, PageID.52–53.)

Although Plaintiff has by no means proven his claim, at this stage of the proceedings, taking Plaintiff's allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's claim against Defendants Hill and Gibson regarding the book rejection on initial review.

### C.    First Amendment Retaliation Claims

Plaintiff alleges that Defendants Hill and Gibson retaliated against him in violation of the First Amendment. (*See* Compl., ECF No. 1, PageID.4–7.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.     Protected Conduct

With respect to the first element of a First Amendment retaliation claim, a prisoner has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."). Here, Plaintiff references filing several grievances. (*See* Compl., ECF No. 1, PageID.3–5.) Therefore, at this stage of the proceedings, Plaintiff has alleged sufficient facts to suggest that he engaged in protected conduct for purposes of his First Amendment claim.

### 2.     Adverse Action

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the

12

defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

Plaintiff alleges that Defendants Hill and Gibson retaliated against him when they improperly rejected the book titled, "Employer's Legal Handbook," which had been sent to Plaintiff. (Compl., ECF No. 1, PageID.3–7.) At this stage of the proceedings, the Court assumes, without deciding, that the alleged improper rejection of Plaintiff's book constitutes adverse action.

### 3.       Retaliatory Motive

To satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. In this action, Plaintiff merely alleges the ultimate fact of retaliation; however, he alleges no facts from which to reasonably infer that Defendants Hill and Gibson were motivated by any protected conduct. Plaintiff's allegations against Defendants Hill and Gibson rest entirely on a conclusory allegation of temporal proximity—i.e., that he had filed at least one grievance about alleged mail tampering by mailroom staff before Defendants Hill and Gibson rejected the book in question.

Although temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the Sixth Circuit, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after the plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d

at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

In this action, Plaintiff fails to allege sufficient facts to suggest that Defendants Hill and Gibson knew about Plaintiff's prior grievances regarding the alleged mail tampering. Additionally, Plaintiff alleges that he filed grievances about the conduct of Defendants Hill and Gibson; however, the facts alleged by Plaintiff show that he filed these grievances after Defendants Hill and Gibson had rejected the book in question. And, Plaintiff fails to allege any facts to suggest that Defendants Hill and Gibson knew that he had filed grievances regarding the rejection of the book. Under these circumstances, the suggestion of temporal proximity alone is insufficient to show a retaliatory motive. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987) ("[A]lleging merely the ultimate fact of retaliation is insufficient."). Furthermore, such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)). Therefore, assuming that Plaintiff alleged sufficient facts to show that Defendant Hill's and Defendant Gibson's actions constituted adverse actions, because Plaintiff fails to allege any facts to suggest that these Defendants were motivated by Plaintiff's protected conduct, Plaintiff fails to state a First Amendment retaliation claim against them.

Accordingly, for all of the reasons set forth above, Plaintiff's First Amendment retaliation claims will be dismissed.

### D.      Fourteenth Amendment Claims

### 1.      Due Process Clause

Plaintiff alleges that his due process rights were violated when the book in question was rejected and when the book was not sent to Howell after the rejection. (Compl., ECF No. 1, PageID.1, 6–7.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Further, the elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

It is well established that Plaintiff has a liberty interest in receiving his mail. *See Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) (citing *Procunier v. Martinez*, 416 U.S. 396, 428 (1974), *overruled on other grounds by Thornburgh*, 490 U.S. 401). The Sixth Circuit has held that an incoming mail censorship regulation must provide "that notice of rejection be given to the inmate-recipient" and that the inmate-recipient be given the opportunity to challenge the rejection. *Martin v. Kelley*, 803 F.2d 236, 243–44 (6th Cir. 1986). The regulation "must also provide for an appeal of the rejection decision to an impartial third party." *Id.* at 244.

It is clear from Plaintiff's complaint and the attachments to his complaint that he received the process to which he was due. Plaintiff acknowledges that he received a notice of mail rejection

15

for the book in question. (Compl., ECF No. 1, PageID.3.) Additionally, Plaintiff requested a hearing and was provided that hearing, where he had the opportunity to challenge the rejection.[2] (*See id.*, PageID.3; *see also* ECF No. 1-8, PageID.39.) MDOC Policy Directive 05.03.118 also allows for appeal of the decision. MDOC Policy Directive 05.03.118 ¶¶ EEE, FFF (eff. Mar. 1, 2018).

Furthermore, to the extent that Plaintiff alleges that Defendants deprived him of property without due process of law, this claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

---

[2] Plaintiff alleges in a conclusory manner that Defendant Gibson "assumed the role of a[n] administrative law judge/hearing officer without authorization under the law and disposed of Plaintiff's property" in violation of the Fourteenth Amendment. (Compl., ECF No. 1, PageID.7.) Plaintiff alleges no facts to support his suggestion that Defendant Gibson lacked authorization to preside over the mail rejection hearing. Under these circumstances, this conclusory allegation unsupported by any facts is insufficient to show a due process violation.

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112, ¶ B (eff. Apr. 26, 2021). Moreover, aggrieved prisoners may submit claims for property loss of less than $1,000.00 to the State Administrative Board. Mich. Comp. Laws. § 600.6419; MDOC Policy Directive 03.02.131 (eff. Mar. 27, 2017). Finally, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff alleges no reason why a state court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

Moreover, to the extent that Plaintiff alleges that Defendants violated the MDOC's policy, he fails to allege a constitutional claim. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law or prison policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). Additionally, courts have routinely recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992).

For all of the above-discussed reasons, Plaintiff's Fourteenth Amendment procedural due process claims will be dismissed.[3]

### 2. Equal Protection Clause

Plaintiff alleges that his right to equal protection under the Fourteenth Amendment was violated, stating that Defendants "intentionally discriminat[ed] against him in denying equal protection of the prison policies and state laws." (*See, e.g.*, Compl., ECF No. 1, PageID.7.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not

---

[3] To the extent that Plaintiff intended to raise a substantive due process claim regarding the rejection of the book in question, he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Fourteenth Amendment Procedural Due Process Clause applies to protect Plaintiff's liberty interest in receiving his mail and the First Amendment applies to protect Plaintiff's right to the free flow of his mail. Consequently, any intended substantive due process claim is properly dismissed.

require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, Plaintiff alleges in a conclusory manner that Defendants "discrimen[ated] against [him]"; however, Plaintiff fails to identify any other prisoners who were similarly situated, but treated differently. Instead, Plaintiff's allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Moreover, to the extent that Plaintiff intended to assert a class-of-one equal protection claim, he fails to state such a claim. "[T]he hallmark of [a 'class-of-one'] claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (alterations in original) (citations omitted); *see Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a

'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citation omitted).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). Even viewing Plaintiff's equal protection claim as a class-of-one claim, Plaintiff's equal protection claims are wholly conclusory. Plaintiff fails to allege any facts to demonstrate that his fellow inmates were similar in all relevant aspects. Plaintiff's conclusory allegations simply do not suffice to state a claim.

Accordingly, for all of the reasons set forth above, the Court will dismiss Plaintiff's Fourteenth Amendment equal protection claim.

### E.    State Law Claims

Plaintiff suggests that Defendants Taskila, Horrocks, and Bastian violated his rights under state law. (Compl., ECF No. 1, PageID.6 (alleging that Defendants Taskila, Horrocks, and Bastian "were grossly negligent in supervising their subordinates").) Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar*, 457 U.S. at 924. Plaintiff's assertions that Defendants Taskila, Horrocks, and Bastian violated state law fail to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of

20

multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, because Plaintiff's federal claims against Defendants Taskila, Horrocks, and Bastian will be dismissed, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims against these Defendants. Plaintiff's state law claims will be dismissed without prejudice.

<u>**Conclusion**</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Taskila, Horrocks, Bastian, and Pittsley will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss Plaintiff's state law claims against Defendants Taskila, Horrocks, Bastian without prejudice because the Court declines to exercise supplemental jurisdiction over these claims. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Hill and Gibson: First Amendment claim regarding mail tampering, First Amendment retaliation claim, and Fourteenth Amendment due process and equal protection claims. Plaintiff's First Amendment claim against Defendants Hill and Gibson regarding the book rejection remains in the case.

An order consistent with this opinion will be entered.


Dated:      June 9, 2023                            /s/ Jane M. Beckering
                                                          Jane M. Beckering
                                                          United States District Judge